IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SERING CEESAY,**<br><br>*Petitioner-Plaintiff,*<br><br>v.<br><br>**Pam BONDI,** Attorney General of the United States; **Sirce E. OWEN** acting Director of the Executive Office for Immigration Review (EOIR); **IMMIGRATION JUDGE Carrie C. JOHNSON-PAPILLO;** Michael P. **DAVIS** is the acting Assistant Chief Immigration Judge, Executive Office of Immigration Review[1]; **James McHENRY**, acting Attorney General of the United States; **Kristi NOEM**, in her official capacity as Secretary, **U.S. Department of Homeland Security** and **U.S. Immigration and Customs Enforcement,**<br><br>*Respondents-Defendants.* | Civil Action No.:<br><br>COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF |

1. Plaintiff, Sering Ceesay, ("Mr. Ceesay" or "Plaintiff") petitions this Court for declaratory, injunctive and mandamus relief to 1) order Immigration Judge Carrie C. Johnson-Papillo to issue a written decision of her denial of Mr. Ceesay's motion to reopen that she denied on April 25, 2025-according to the Executive Office of Immigration Review ("EOIR") automated case information at https://acis.eoir.justice.gov/en/caseInformation-Exh. 1, Online Decision Information, 2) order the Board of Immigration Appeals ("Board" or "BIA") to adjudicate his motion for an emergency stay of removal and, alternatively, if the emergency

---

[1] As of the date of the date of this petition, the position of Chief Immigration Judge for the Executive Office of Immigration Review is vacant. *See* https://www.justice.gov/eoir/office-of-the-chief-immigration-judge

1

stay is denied, to adjudicate his appeal of the decision and order of the Immigration Judge denying his motion to reopen. As of the date of this complaint, Defendant, Immigration and Customs Enforcement (ICE) has indicated that it intends to deport Plaintiff from the United States on May 7, 2025.

2. As is set forth more fully *infra,* Mr. Ceesay-who as is discussed *infra* has serious medical issues-left his home on February 19, 2025, without anything—not even his medication—with the full expectation based upon the representations of the government for fourteen (14) years-that he would return to his home. While Mr. Ceesay had an order of removal since in or about 1997, he—relying upon the actions of the government for 14 years—did not believe, with good reason, that he would be detained on February 19, 2025.

3. At the time of Mr. Ceesay's detention, ICE did not have a travel document, but ICE does now have a travel document, and ICE has indicated that it intends to deport Plaintiff from the United States on May 7, 2025. The travel document obtained by ICE is valid until October 2025.

4. Mr. Ceesay is illiterate, has a myriad of serious medical issues, and at the time of his unnoticed detention on or about February 19, 2025, he did not have an attorney. *See* Exh. 2, Letter from Dr. Joseph Shin, MD, MSc, Assistant Professor of Medicine, Division of Hospital Medicine, Cornell Center for Health Equity dated March 25, 2025 ("Shin Medical Letter") and Exh. 3, Supplemental Shin Medical Letter dated April 18, 2025 ("Shin Supplemental Medical Letter").[2]

5. ICE transported him nearly four hundred (400) miles from his home in the Bronx, New York to the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.

---

[2] The Shin Medical Letter has a redaction pursuant to Federal Rule of Civil Procedure 5.2-redaction of Petitioner's date of birth.

6. In fact, he did not even have the ability to meet with an attorney until March 4, 2025, when undersigned counsel at RFK Human Rights conducted a pre-approved legal rights presentation at the BFDF. On March 4, 2025, due to a medical emergency Mr. Ceesay was not even medically able to convey the circumstances of his situation.

7. RFK Human Rights requested that Mr. Ceesay go to the medical unit. Mr. Ceesay was sent from the medical unit on March 4, 2025, to an outside hospital. Mr. Ceesay suffered "a transient ischemic attack (a temporary stroke-like syndrome due to atherosclerotic plaque in the blood vessels of the brain)." *See* Exh. 3, Shin Medical Letter.[3]

8. As is set forth more fully *infra,* on March 26, 2025, Mr. Ceesay filed a writ of habeas corpus in the United States District Court for the Western District of New York challenging his unlawful detention by ICE and sought release from detention. *See Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV.

9. On March 31, 2025, Mr. Ceesay filed a motion to reopen with the Immigration Court. *See* Exh. 4, motion to reopen.[4] Together with the motion to reopen, Mr. Ceesay also filed a motion for a stay of removal pending the adjudication of the motion to reopen. As is set forth above, the motion to reopen was denied-and as of the date of this complaint-Mr. Ceesay's counsel have not yet received a written decision from the Immigration Judge. *See supra* and Exh. 1, Online Decision Information,

10. On May 3, 2025, Mr. Ceesay was released from the custody of ICE pursuant to the Decision

---

[3] The Shin Medical Letter has a redaction pursuant to Federal Rule of Civil Procedure 5.2- redaction of Petitioner's date of birth.

[4] Because this Complaint is not seeking any adjudication of the motion to reopen, Plaintiff is filing the motion to reopen without exhibits. If the exhibits to the motion to reopen become necessary to the adjudication of the claims herein, Mr. Ceesay will file the exhibits to the motion to reopen but will also have to seek leave to file the proposed asylum application under seal because of the confidential nature of the application.

and Order of the Honorable Lawrence J. Vilardo. *See Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV (W.D.N.Y. May 2, 2025)

11. On May 3, 2025, ICE Defendant, Immigration and Customs Enforcement (ICE) has indicated that it intends to deport Plaintiff from the United States on May 7, 2025.

12. If Mr. Ceesay had been given notice and warning that he was going to be detained on February 19, 2025, he could have sought legal counsel to pursue a motion to reopen his immigration case prior to March 31, 2025. But, as is set forth *supra* and in *Ceesay v. Kurzdorfer*, No. 25-CV-267-LJV (W.D.N.Y. May 2, 2025), Mr. Ceesay was not given any notice that he would be detained on February 19, 2025 and it was impossible, given his serious medical issues, indigent status, and detention nearly 400 miles away from home, for him to obtain counsel until RFK Human Rights met with him on March 4, 2025, thereafter agreed to represent him on March 11, 2025 and filed a motion to reopen with expert medical evidence on March 31, 2025.

13. As is set forth *supra,* as of the date of this complaint, Mr. Ceesay's counsel has not received a written decision from the Immigration Judge of the denial of Plaintiff's motion to reopen. Because-as of April 30, 2025-ICE stated its' intent to remove Mr. Ceesay from the United States the first week of May of 2025 and has now confirmed that their intent to remove on May 7, 2025, it was necessary to file an appeal with the Board and to also file an emergency motion for a stay of removal to preserve Plaintiff's rights.

14. The BIA has not decided on the emergency stay motion that was filed on April 30, 2025. The BIA also has not decided Mr. Ceesay's appeal of the Immigration Judge's decision to deny his motion to reopen. Upon information and belief, the BIA also has not received a written decision from the Immigration Judge who denied Mr. Ceesay's motion to reopen on April 25, 2025.

15. Per BIA policy, there is no indication that it will rule on Mr. Ceesay's emergency motion for a stay until close to the eve of his deportation.

16. There is also no indication that the BIA will rule on Mr. Ceesay's emergency motion for a stay of removal without a written decision from the Immigration Judge.

17. There is no telling when the BIA will adjudicate his appeal of the Immigration Judge's denial of Mr. Ceesay's motion to reopen-a denial that has been rendered but not written- despite regulations calling for prompt resolution of matters before the Board, particularly for individuals in government custody.

18. If the BIA denies the emergency stay request and does not adjudicate the appeal of the Immigration Judge's denial of the motion to reopen, Mr. Ceesay will lose the ability to exercise his statutory right to seek a stay of removal from the United States Court of Appeal for the Second Circuit ("Second Circuit") in conjunction with a petition for review of the negative reopening decision.

19. Therefore, Mr. Ceesay seeks this Court's intervention.

## JURISDICTION AND VENUE

20. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361.

21. This Court has jurisdiction to grant declaratory and further proper relief pursuant to 28 U.S.C. §§ 2201-2202, 5 U.S.C. § 702; 28 U.S.C. § 1361 and the Federal Rules of Civil Procedure 57 and 65. The United States has waived sovereign immunity pursuant to 5 U.S.C. § 702.

22. Venue lies in this District under 28 U.S.C. § 1391(e) because Plaintiff Sering Ceesay is detained by ICE in this District.

## PARTIES

23. Plaintiff, Mr. Ceesay, has lived in the United States for nearly three decades. He resides in the Bronx, New York. As is set forth in the Shin Medical Letter, Mr. Ceesay suffers from complex medical conditions and was, prior to his unnoticed detention on February 19, 2025, receiving ongoing and critical medical care at the Jacobi Hospital in the Bronx, New York. *See* Exh. 2, Shin Medical Letter.

24. Defendant, Pamela Bondi is the Attorney General of the United States and the head of the Department of Justice. She is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, and the Executive Office for Immigration Review ("EOIR"), which houses the immigration courts and the Board of Immigration Appeals. He is sued in his official capacity.

25. Respondent, Sirce E. Owen, is named in her official capacity as the acting Director of EOIR. In this capacity, among other duties, she has the authority to "[d]irect the conduct of all EOIR employees to ensure the efficient disposition of all pending cases, including the power, in her discretion, to set priorities or time frames for the resolution of cases; to direct that the adjudication of certain cases be deferred; to regulate the assignment of adjudicators to cases; and otherwise to manage the docket of matters to be decided by the BIA, the immigration judges, the Chief Administrative Hearing Officer, or the administrative law judges." 8 C.F.R. § 1003.0(b)(1)(ii). Sirce E. Owen is empowered to instruct immigration judges and the BIA to adjudicate an immigration motion.

26. Respondent, Immigration Judge Carrie C. Johnson-Papillo, is sued in her official capacity as an Immigration Judge employed by EOIR. Upon information and belief, Immigration Judge

6

Carrie C. Johnson-Papillo has a duty to issue written decisions so that there can be review by the Board. 8 CFR § 1003.10.

27. Respondent, Michael P. Davis is sued in his official capacity as acting Assistant Chief Immigration Judge, EOIR. Upon information and belief, the acting Assistance Chief Immigration Judge has the authority to direct Immigration Judges to adjudicate immigration cases. 8 C.F.R. §1003.10(b).

28. Respondent, James McHenry, is named in his official capacity as acting Attorney General of the United States. Respondent, James McHenry, is charged with the operations of DHS, including removal actions taken by DHS's sub-agency, ICE.

29. Respondent, Kristi Noem, is named in her official capacity as the Secretary, U.S. Department of Homeland Security. In this capacity, she is responsible for overseeing ICE's day-to-day operations, leading approximately 20,000 ICE employees, including Respondent Joyce.

30. Respondent U.S. Department of Homeland Security ("DHS") is an executive department of the United States Government headquartered in Washington, D.C. DHS is the parent agency of ICE.

31. Respondent ICE is a component agency of DHS and is responsible for enforcing federal immigration law, including the detention and removal of immigrants.

## FACTUAL ALLEGATIONS

32. Mr. Ceesay is sixty-three (63) years old and has lived in the United States for nearly three decades. He is not fully literate-he has limited reading and writing ability because he never attended school. *See* Exh. 5, Ceesay Decl. He suffers from a myriad of serious and chronic medical issues. *See* Exh.2, Shin Medical Letter.

33. Mr. Ceesay was re-detained—approximately 14 years after he was released from ICE detention—at a regularly scheduled ICE check-in according to the unilateral decision of one ICE officer. *See* Exh. 5, Ceesay Decl., ¶6. Prior to his unnoticed detention, he lived in the Bronx, New York in the same apartment for nearly three decades.

34. At the time of his unnoticed detention on February 19, 2025, Mr. Ceesay did not have his medication. Therefore, there was a disruption in Mr. Ceesay receiving his medication because he was taken to two different facilities prior to the BFDF. RFK Human Rights met Mr. Ceesay for the first time on March 4, 2025, at the BFDF. Mr. Ceesay did not have legal counsel at the time of his unnoticed detention by ICE on or about February 19, 2025.

35. On March 4, 2025, Mr. Ceesay was in visible medical distress and was, at the request of RFK Human Rights, sent to the medical unit at BFDF. However, the medical unit at BFDF could not address his medical needs on that date, and he was thereafter sent to an outside of medical provider for emergency medical treatment. As is set forth in the Shin Medical Letter, Mr. Ceesay suffered "a transient ischemic attack (a temporary stroke-like syndrome due to atherosclerotic plaque in the blood vessels of the brain)." *See* Exh. 2, Shin Medical Letter.

36. As the Shin Medical Letter explains, Mr. Ceesay's "medications serve an important role in decreasing the risk of stroke and stroke-like conditions which can lead to chronic disability and death. Even while on these medications, Mr. Ceesay suffered from a transient ischemic attack which further reflects his especially high risk of complications if he were to be taken off his medications." *Id.* As someone who cannot read or write, Mr. Ceesay is dependent on consistency with health care providers that can help organize and advise on his medication.

37. On March 11, 2025, RFK Human Rights sent an email to ICE that requested *inter alia* any and all documents related to Mr. Ceesay's immigration proceedings, including, but not limited to,

any and all documents that were served upon him at the time of his detention by ICE and that have been served upon him since the time of his detention at BFDF. RFK Human Rights also requested any and all medical records for Mr. Ceesay and to be provided notice of any and all meetings with ICE and consulates. RFK Human Rights sent email follow-ups to ICE on March 13, 2025, March 14, 2025, March 17, 2025, and March 18, 2025.

38. On March 20, 2025, ICE transmitted Mr. Ceesay's medical records to RFK Human Rights. Thereafter, RFK Human Rights sought and was able to secure the pro bono assistance of a medical expert, Dr. Shin, who prepared and completed the Shin Medical Letter on March 25, 2025. *See* Exh. 2, Shin Medical Record. Dr. Shin subsequently prepared the Shin Supplemental Letter, Exh. 3, upon receiving additional medical records that were not yet received from Jacobi Medical Center prior to the preparation of the Shin Medical Record.

39. On March 25, 2025, ICE transmitted to RFK Human Rights a total of six (6) pages of legal documents.

40. Prior to his unnoticed detention, Mr. Ceesay was receiving medical treatment at the Jacobi Medical Center in the Bronx, New York. Mr. Ceesay did not have any reason to suspect that he would be arrested on February 19, 2025. *See* Exh. 5, Ceesay Decl., ¶¶23-25. Mr. Ceesay did not have legal counsel prior to March 11, 2025, and did not have any prior notice or warning that ICE would detain and process him for deportation on or about February 19, 2025. *See Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV (W.D.N.Y. May 2, 2025).

41. On March 31, 2025, Mr. Ceesay, by and through undersigned counsel, filed his motion to reopen with the Immigration Court, 26 Federal Plaza, New York, NY 10278 on March 31, 2025. *See* Exh. 4, motion to reopen. Together with the motion to reopen, Mr. Ceesay also filed a motion for a stay of removal pending the adjudication of the motion to reopen.

9

42. Mr. Ceesay is seeking to reopen his immigration removal proceeding to apply for asylum, withholding of removal and deferral under the United Nations Convention Against Torture ("CAT"). As is set forth more fully in his motion to reopen, given the impact of Mr. Ceesay's serious medical issues he will suffer economic harm in the Gambia. The Second Circuit has held that "[e]conomic harm 'constitutes persecution if it (1) deprives the victim of liberty, food, housing, employment or other essentials of life, or (2) deliberately imposes a severe economic disadvantage.'' *De La Rosa v. Sessions*, 690 F. Appx. 20, 22 (2d. Cir. 2017) citing to *Huo Qiang Chen v. Holder*, 773 F.3d 396, 405 (2d Cir. 2014).

43. On April 25, 2025, Mr. Ceesay's motion to reopen was denied. *See* Exh. 1, Online Decision Information. Mr. Ceesay's counsel learned of the Immigration Decision by checking the available information on the EOIR automated system online.

44. On April 28, 2025, Mr. Ceesay's counsel contacted the Immigration Court, the legal assistant for the Immigration Judge who denied the motion to reopen,and requested a copy of the Immigration Judge's decision. Mr. Ceesay's counsel did not receive a return call.

45. On April 29, 2025, a representative from RFK Human Rights went to the Immigration Court at 26 Federal Plaza in person to request a copy of the IJ Decision. RFK Human Rights was advised by 26 Federal Plaza that while the Immigration Judge had denied Mr. Ceesay's motion to reopen a written decision had not yet been issued.

46. Therefore, the only available decision that Mr. Ceesay has as of the date of this Complaint is information available on the EOIR automated system online and the representations of the Immigration Court.

47. An appeal of the Immigration Judge's decision was filed with the BIA on April 30, 2025. Mr. Ceesay also filed an emergency stay motion with the BIA.

48. On May 3, 2025, ICE has indicated that it intends to deport Plaintiff from the United States on May 7, 2025.

## LEGAL FRAMEWORK

*Mr. Ceesay's right to adjudication and the BIA's duty to timely adjudicate.*

49. The immigration statute and accompanying regulations afford individuals the right to file a motion to reopen, including based on changed country conditions in their country of origin. 8 U.S.C. §§ 1229a(c)(7)(C)(ii); 1101(a)(47)(B); *see also* 8 C.F.R. §§ 1003.1(b)(3), 1003.2.

50. The Supreme Court repeatedly has recognized that statutory motions to reopen are an "important safeguard," intended to "ensure proper and lawful disposition" of removal proceedings. *Dada v. Mukasey*, 554 U.S. 1, 18 (2008); *Kucana v. Holder*, 558 U.S. 233, 242, 249-51 (2010) (protecting judicial review of motions to reopen in light of the importance of such motions); *Reyes Mata v. Lynch*, 135 S. Ct. 2150, 2153 (2015) (quoting *Dada*, 554 U.S. at 4-5, to recognize that each noncitizen ordered removed "'has *a right* to file one motion' with the IJ [Immigration Judge] or Board to 'reopen his or her removal proceedings.'") (emphasis added).

51. The BIA has authority to reopen "any case in which it has rendered a decision" pursuant to 8 C.F.R. § 1003.2(a).

52. The filing of a motion to reopen and/or an appeal of an Immigration Judge's denial of a motion to reopen does not necessarily stay the execution of a removal order. Yet a stay of removal—and with it the opportunity to remain safely in the United States—is often crucial to the motion reopen process.

53. First, individuals seeking to reopen their case to pursue relief based upon the fear of persecution and torture risk the very irreparable harm and persecution that their motion seeks

11

to avoid, if they are deported before that motion can be adjudicated. *See Devitri v. Cronen*, 289 F. Supp. 3d 287, 294 (D. Mass. 2018).

54. Second, it is much more difficult to pursue the motion to reopen process from outside the United States, because it can be difficult to communicate with one's attorney and obtain and provide evidence, particularly if the person deported is in hiding due to the threat of persecution. *See Compere v. Nielsen,* 358 F. Supp. 3d 170, 181-182 (D.N.H. 2019). This is particularly true here as is discussed *supra*.

55. Third, no reliable system is in place to ensure that people departed from the United States, if they are able to survive, can return to the U.S. if their motion to reopen is later granted. For instance, the government will not necessarily pay for travel or assist with arrangements which, as a practical matter, may make returning impossible. *See Nat'l Immigration Project of Nat'l Lawyers Guild v. U.S. DHS*, No. 11-cv-3235, 2014 WL 6850977, at *5 (S.D.N.Y. Dec. 3, 2014) (finding "the government's refusal to fund the return of indigent aliens" "troubling" because "the financial burden of removal may, as a practical matter, preclude effective relief.").

56. If the BIA denies Mr. Ceesay's appeal of the denial of the Immigration Judge's decision to deny the motion to reopen, he may seek judicial review of that denial before the Second Circuit. §§ 1252(a) (judicial review over final orders of removal); 1252(b)(6) (consolidation of judicial review of denials of motions to reopen with review of removal orders); 1101(a)(47)(B) (definition of a final order); 1252(d)(1) (exhaustion of administrative remedies). The Supreme Court recently affirmed that individuals may seek review of factual findings in conjunction with a denial of claims under the CAT. *Nasrallah v. Barr*, 590 U.S. _ , 140 S. Ct. 1683 (2020).

57. Mr. Ceesay is thus statutorily entitled to seek a judicial stay of removal from the Second Circuit (the circuit in which his removal proceedings occurred) in conjunction with the filing of a petition for review. 8 U.S.C. § 1252(b)(3)(B); *see also Nken v. Holder*, 556 U.S. 418 (2009). The consideration of a stay of removal by a federal court of appeals is conditioned on the filing of a petition for review. *See* 8 U.S.C. § 1252(a), (b)(3)(B).

58. Regulations state that the Board shall adjudicate cases promptly, "with a priority for cases…involving detained aliens." 8 C.F.R. § 1003.1(e)(8).

59. EOIR policy states that the BIA's stay authority should "safeguard [a noncitizen] from being inappropriately deported before he is heard on his motion to reopen or reconsider." *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01, 10321 (Mar. 6, 1997).

60. As is set forth *supra,* as of the date of this complaint, Mr. Ceesay's counsel has not even received a written decision from the Immigration Judge of the denial of Plaintiff's motion to reopen.

61. There is no guarantee that if the BIA denies the stay, that it will concurrently rule on Mr. Ceesay's appeal of the Immigration Judge's denial of the motion to reopen, precluding Mr. Ceesay from filing a petition for review and seeking a judicial stay of removal before ICE physically deports him to the Gambia.

## CAUSE OF ACTION

### COUNT ONE

### Petition for Mandamus, 28 U.S.C. 1361

62. Mr. Ceesay incorporates each and every allegation contained in the preceding paragraphs.

63. Mandamus relief is available to a party to compel a federal officer to perform a duty where: 1) the party has a clear right to the relief requested; 2) the officer has a clear, non-discretionary duty to act; and 3) there is no adequate remedy available. 28 U.S.C. § 1361.

64. Defendants are empowered to instruct the Immigration Judge to issue a written decision so that Mr. Ceesay can obtain full review before the Board of his emergency motion for a stay of removal and on his appeal of the decision of the Immigration Judge denying his motion to reopen.

65. Defendants are empowered to instruct the BIA to adjudicate a motion and appeal pending before it.

66. Mr. Ceesay has the right to receive a written decision of the Immigration Judge's denial of his motion to reopen.

67. Mr. Ceesay has a right to adjudication of his emergency motion for a stay of removal and, if the motion for a stay of removal is not granted, the right to an adjudication of his appeal.

68. The BIA has a duty to promptly adjudicate Mr. Ceesay's emergency motion to reopen and his appeal. Further, according to the BIA's s own rule, Mr. Ceesay's case should be given priority because ICE has indicated that he will be deported.

69. Mr. Ceesay faces imminent deportation. ICE intends to deport him on May 7, 2025.

70. The Immigration Judge and the BIA have deprived Mr. Ceesay of his statutory and regulatory rights under the Immigration and Nationality Act (INA). *See* 8 U.S.C. §§ 1229a(c)(7); 1252(a)(1); 8 C.F.R. §§ 1003.1(e)(8); 1208.17.

71. The failure of the Immigration Judge to issue a written decision and the BIA's withholding adjudication of Mr. Ceesay's emergency motion to reopen and, if that motion is denied, the adjudication of his appeal of the Immigration Judge's decision to deny his motion to reopen,

likewise withholds the needed predicate final order, i.e., any denial of his motion to reopen, necessary for filing a petition for review.

72. Mr. Ceesay has thus been deprived of the opportunity to seek a judicial stay of removal before the Second Circuit if the Board denies his motion to reopen. *See Shaboyan v. Holder*, 652 F.3d 988, 989-90 (9th Cir. 2011) (holding that the court does not have jurisdiction to review the BIA's denial of a stay of removal independent of a petition for review as a stay denial is not a "final order" of removal).

73. Immigration agencies, including the BIA, cannot functionally eliminate statutory rights. *See e.g., Kucana v. Holder, 558 U.S. 233, 252-53* (2010) (agency cannot foreclose judicial review of motions to reopen by regulation). Here, the BIA's failure to adjudicate deprives Mr. Ceesay of his right to seek a judicial stay under 8 U.S.C. § 1252(b)(3)(B) or a hearing before a judge on his claim in lieu of being erroneously deported.

74. Further, the BIA's failure to timely adjudicate Mr. Ceesay's motion for a stay or alternatively, the appeal of the Immigration Judge's denial of his motion to reopen, deprives Mr. Ceesay of procedural due process. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

75. Here, the private interests at stake are weighty: deportation can result in serious and irreparable injuries. *See, e.g., Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947); *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010). In Mr. Ceesay's case, this includes deportation to face persecution and torture as is set forth *supra* and more fully in his motion to reopen. *See* Exh. 4, motion to reopen.

76. The risk of erroneous deprivation absent improved procedures is great.

77. Here, the Immigration Judge has not-as of the submission of this complaint-written a decision of the denial of Plaintiff's motion to reopen despite the irreparable injury that Mr.

Ceesay will face if removed despite denying the motion on April 25, 2025.

78. As of the date of the filing of this Complaint, the BIA has not adjudicated Mr. Ceesay's emergency motion for a stay of removal.

79. Mr. Ceesay thus cannot get a stay of his removal but also cannot move forward to pursue judicial review and a stay from the court of appeals if the BIA denies his appeal of the Immigration Judge's decision-a decision not yet written-to deny his motion to reopen.

80. Any government interest is minimized here, where Mr. Ceesay has resided in the United States for more than three (3) decades. As is discussed *supra,* he was detained without notice or warning on February 19, 2025, after relying upon the government's representations that he was not in threat in removal for 14 years after being granted an OSUP by ICE. *See* Exh. 5, Ceesay Decl. at ¶¶24-25.

81. Mr. Ceesay has exhausted his administrative remedies and has "no other adequate means to attain the relief he desires;" his right to mandamus relief is therefore "clear and indisputable." *Allied Chemical Corp. v. Daiflon, Inc*. 449 U.S. 33, 35 1980.

## COUNT TWO

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1)

82. Mr. Ceesay incorporates each and every allegation contained in the preceding paragraphs.

83. Section 706 of Title 5 provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added).

84. Defendants are responsible for overseeing the Immigration Judges and are empowered to instruct the Immigration Judge to issue a written decision of her April 25, 2025, denial of Mr. Ceesay's motion to reopen.

85. Defendants are responsible for overseeing the BIA and are empowered to instruct the Board to adjudicate pending motions and appeals before it.

86. Mr. Ceesay is presently subject to imminent deportation and has a right to timely adjudication of his motion for a stay of removal and his appeal of the Immigration Judge's motion to reopen.

87. Per the BIA's indication, it will not adjudicate until at minimum 48 hours before his scheduled removal. The BIA does not even-upon information and belief since it has not been received by Mr. Ceesay's counsel as of the date of this Complaint-a written decision from the Immigration Judge denying the motion to reopen that was filed on March 31, 2025.

88. Such delay in adjudication deprives Mr. Ceesay of the statutory right to seek a judicial stay of removal if the BIA denies his stay without ruling on his motion to reopen.

89. The BIA's failure to adjudicate Mr. Ceesay's motion for a stay of removal within a reasonable time constitutes an unlawful withholding or unreasonably delay of an agency action in violation of the APA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays this Court to:

a) Assume jurisdiction over this matter;

b) Order the Immigration Judge to issue a written decision of the denial of Mr. Ceesay's motion to reopen;

c) Order Defendants to instruct the Board to render a decision on Mr. Ceesay's motion for stay of removal and/or his appeal of the Immigration Judge's decision denying his motion to reopen without further delay;

d) Declare contrary to law the Board's failure to adjudicate Mr. Ceesay's emergency motion for a stay of removal and failure to adjudicate Mr. Ceesay's appeal of the Immigration

Judge's decision denying his motion to reopen;

e) Award reasonable costs and attorney fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

f) Grant such further relief as the Court deems just and proper.

//

                                                Respectfully Submitted,

DATED: May 4, 2025
           New York, NY

/s/ Sarah E. Decker
Sarah E. Decker (Bar No. 5850763)
Staff Attorney
Robert F. Kennedy Human Rights
1300 19th Street NW, Ste. 750
Washington, DC 20036
T: (646) 289-5593
E: decker@rfkhumanrights.org

/s/ Sarah T. Gillman
Sarah T. Gillman (Bar No #SG 9273)
Director of Strategic U.S. Litigation
Robert F. Kennedy Human Rights
88 Pine St., 8th Fl., Ste. 801
New York, NY 10005
T: (646)289-5593
E: gillman@rfkhumanrights.org

*Attorneys for Plaintiff*