**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SERING CEESAY**, | |
| *Petitioner-Plaintiff,* | |
| v. | **Civil Action No.: 1:25-cv-03716** |
| **Pam BONDI**, Attorney General of the United States; **Sirce E. OWEN** acting Director of the Executive Office for Immigration Review (EOIR); **Michael P. DAVIS** is the acting Assistant Chief Immigration Judge, Executive Office of Immigration Review[1]; **James McHENRY**, acting Attorney General of the United States; **Kristi NOEM**, in her official capacity as Secretary, U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement, | |
| *Respondents-Defendants.* | |

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDER**

---

[1] As of the date of the date of this petition, the position of Chief Immigration Judge for the Executive Office of Immigration Review is vacant. *See https://www.justice.gov/eoir/office-of-the-chief-immigration-judge*

## PRELIMINARY STATEMENT

Plaintiff, Sering Ceesay, ("Mr. Ceesay" or "Plaintiff"), moves this Court for a temporary restraining order ("TRO") that bars Defendants from detaining him for the purposes of removing him from the United States on May 7, 2025, until such time the Court hears and determines Plaintiff's Complaint for Writ of Mandamus. *See* ECF No. 1, Complaint for Writ of Mandamus ("Complaint").

On this date, May 5, 2025, at approximately 2:47 P.M., Plaintiff's counsel received a call from the Board of Immigration Appeals ("BIA" or "Board") in which they advised that: 1) Defendants Immigration and Customs Enforcement ("ICE") confirmed that Mr. Ceesay was reporting to ICE on May 6, 2025 and that he was going to be deported on May 7, 2025; 2) that the Board denied Mr. Ceesay's stay motion but that it could not fax or email a decision to Plaintiff's counsel because the file is a paper file and can only be transmitted by mail; and 3) that the Board has not decided Mr. Ceesay's appeal of the Immigration Judge's denial of his motion to reopen.

As is set forth *infra,* Mr. Ceesay was released from ICE custody. He was detained at the Buffalo Federal Detention Center (BFDF) from his unnoticed detention on February 19, 2025 until May 3, 2025, when he was released from detention pursuant to the pursuant to the Decision and Order of the Honorable Lawrence J. Vilardo. *See Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV (W.D.N.Y. May 2, 2025). The relief requested in *Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV (W.D.N.Y. May 2, 2025) was related to Mr. Ceesay's unlawful detention and therefore is separate and distinct from the relief requested in his Complaint. The statement above regarding the information available to Mr. Ceesay's counsel at this time is based upon a status conference that was held in *Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV (W.D.N.Y. May 2, 2025).

Mr. Ceesay brings this motion for emergency injunctive relief because his impending

deportation will cause irreparable harm. Mr. Ceesay is seeking asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), and he fears he will be subject to violence and torture if he is deported to the Gambia. As is set forth more fully in his motion to reopen (ECF No. 1-4) given the impact of Mr. Ceesay's serious medical issues he will suffer economic harm in the Gambia. The Second Circuit has held that "[e]conomic harm 'constitutes persecution if it (1) deprives the victim of liberty, food, housing, employment or other essentials of life, or (2) deliberately imposes a severe economic disadvantage.'' *De La Rosa v. Sessions*, 690 F. Appx. 20, 22 (2d. Cir. 2017) citing to *Huo Qiang Chen v. Holder*, 773 F.3d 396, 405 (2d Cir. 2014).

Mr. Ceesay's Complaint avers that the Immigration Judge and the BIA have violated his statutory and constitutional rights. *See id.* Specifically, the Complaint petitions the Court for declaratory, injunctive and mandamus relief to 1) order Immigration Judge Carrie C. Johnson-Papillo to issue a written decision of her denial of Mr. Ceesay's motion to reopen that she denied on April 25, 2025-according to the Executive Office of Immigration Review ("EOIR") automated case information at  https://acis.eoir.justice.gov/en/caseInformation-ECF  No.1, Online Decision Information, 2) order the Board of Immigration Appeals ("Board" or "BIA") to adjudicate his motion for an emergency stay of removal and, alternatively, if the emergency stay is denied, to adjudicate his appeal of the decision and order of the Immigration Judge denying his motion to reopen. *See* ECF No. 1, Complaint at ¶1.

As is set forth more fully *infra,* Mr. Ceesay, an individual with serious medical issues (ECF No. 2, Shin Medical Letter and ECF No. 3, Shin Supplemental Medical Letter),[2] left his home on

---

[2] The Shin Medical Letter has a redaction pursuant to Federal Rule of Civil Procedure 5.2-redaction of Petitioner's date of birth.

February 19, 2025, without anything—not even his medication—with the full expectation based upon the representations of the government for fourteen (14) years-that he would return to his home. While Mr. Ceesay has had an order of removal since in or about 1997, he did not believe, with good reason, that he would be detained on February 19, 2025. ICE transported him nearly four hundred (400) miles from his home in the Bronx, New York to the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. As is set forth more fully *infra,* on March 26, 2025, Mr. Ceesay filed a writ of habeas corpus in the United States District Court for the Western District of New York challenging his unlawful detention by ICE and sought release from detention. *See Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV.

On March 31, 2025, Mr. Ceesay filed a motion to reopen with the Immigration Court. *See* ECF No. 1-4, motion to reopen.[3] Together with the motion to reopen, Mr. Ceesay also filed a motion for a stay of removal pending the adjudication of the motion to reopen. As is set forth above, the motion to reopen was denied and, as of the date of this TRO and the Complaint (ECF No. 1, Complaint), Mr. Ceesay's counsel have not yet received a written decision from the Immigration Judge. *See supra* and ECF No.1-1, Online Decision Information,

As is set forth *supra,* on May 3, 2025, Mr. Ceesay was released from the custody of ICE. As is set forth above, based upon all available information available to Plaintiff's counsel, ICE have stated their intent, including the purchase of a series of plane tickets for the deportation, to remove Mr. Ceesay from the United States on May 7, 2025. In *Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV (W.D.N.Y. May 2, 2025), the Court at FN29-suggested the parties confer but at a status

---

[3] Because this Complaint is not seeking any adjudication of the motion to reopen, Plaintiff is filing the motion to reopen without exhibits. If the exhibits to the motion to reopen become necessary to the adjudication of the claims herein, Mr. Ceesay will file the exhibits to the motion to reopen but will also have to seek leave to file the proposed asylum application under seal because of the confidential nature of the application.

conference held before the Court, counsel for the government set forth the information regarding the plane tickets and that ICE did not intend to confer about a plan for an "orderly departure."

Even though Mr. Ceesay was released from detention on May 3, 2025 with an electronic monitor, has serious medical issues, has resided in the United States for more than three (3) decades, has a pending appeal of a denial of his motion to reopen by the Immigration Judge who has not yet issued a written decision, and that ICE's travel document is valid until May 7, 2025, as is set forth *supra,* and as confirmed by the BIA at 2:47 P.M. today, ICE's intends detain Mr. Ceesay at his scheduled check-in on May 6, 2025 at 12:15 P.M. (*See* Exh. 1-Email from ICE that Mr. Ceesay has to report on May 6, 2026, at 12:15pm) and to remove him from the United States on May 7, 2025.

If Mr. Ceesay had been given notice and warning that he was going to be detained on February 19, 2025, he could have sought legal counsel to pursue a motion to reopen his immigration case prior to March 31, 2025. But, as is set forth *supra* and in *Ceesay v. Kurzdorfer*, No. 25-CV-267-LJV (W.D.N.Y. May 2, 2025), Mr. Ceesay was not given any notice that he would be detained on February 19, 2025 and it was impossible, given his serious medical issues, indigent status, and detention nearly 400 miles away from home, for him to obtain counsel until RFK Human Rights met with him on March 4, 2025, thereafter agreed to represent him on March 11, 2025 and filed a motion to reopen with expert medical evidence on March 31, 2025.

Plaintiff's counsel are not, as of the date of this TRO, in receipt of a written decision by the Immigration Judge denying his motion to reopen and only have the Online EOIR information (ECF No. 1-1). The BIA has not decided Mr. Ceesay's appeal of the Immigration Judge's decision to deny his motion to reopen. Upon information and belief, the BIA also has not received a written decision from the Immigration Judge who denied Mr. Ceesay's motion to reopen on April 25,

2025.

Therefore, there is no telling when the BIA will adjudicate his appeal of the Immigration Judge's denial of Mr. Ceesay's motion to reopen—a denial that has been rendered but not written—despite regulations calling for prompt resolution of matters before the Board, particularly for individuals in government custody. If the BIA denies the emergency stay request and does not adjudicate the appeal of the Immigration Judge's denial of the motion to reopen, Mr. Ceesay will lose the ability to exercise his statutory right to seek a stay of removal from the United States Court of Appeal for the Second Circuit ("Second Circuit") in conjunction with a petition for review of the negative reopening decision.

For the reasons set forth below and, in the Complaint, (ECF No. 1), Mr. Ceesay is likely to succeed on the merits of his Complaint. The BIA has now denied Mr. Ceesay's motion for a stay of him removal, a decision that—like the decision of the Immigration Judge—Plaintiff's counsel does not have in hand because the BIA will not provide counsel with a copy by fax or email and is relying upon physical mail. The BIA has not decided his appeal of the Immigration Judge's denial of his motion to reopen. Therefore, Mr. Ceesay cannot seek review by the United States Second Circuit Court of Appeal ("Second Circuit"). *See* ECF No. 1, Complaint at ¶¶61-89.

If Mr. Ceesay is deported without a ruling on his appeal of the Immigration Judge's denial of motion to reopen, he will be deprived of his statutory right to seek a judicial stay of removal before the Second Circuit. 8 U.S.C. § 1252(b)(3)(B). Mr. Ceesay can only seek a stay before the Second Circuit in conjunction with a petition for review challenging any denial of his motion to reopen. *See e.g. Shaboyan v. Holder*, 652 F.3d 988, 989-990 (9th Cir. 2011) (the denial of a stay of removal is not a "final removal order," and court of appeals does not have jurisdiction to review).

The harm caused by Mr. Ceesay's deportation to a country where he fears serious harm or death without adjudication of these motions is irreparable.

In contrast, the government—who has not opposed his pending appeal—has no cognizable interest in deporting Mr. Ceesay without first adjudicating his timely, unopposed motion to reopen in order to preserve his due process rights.

Therefore, the balance of the equities favors immediate injunctive relief.

## NOTICE TO DEFENDANTS

Undersigned counsel Sarah T. Gillman contacted the U.S. Attorney's Office for the Southern District of New York by email on May 5, 2025, notifying them that the complaint was filed on May 4, 2025, and provided a copy the complaint. Undersigned counsel, by email, advised the U.S. Attorney's Office for the Western District of New York that this application would be filed. Undersigned counsel affirms that she intends to send, via email, a copy of the complaint, the motion for a TRO, this memorandum of law, and a proposed order for granting the TRO to the U.S. Attorney's Office for the Southern District of New York.

## RELEVANT STATEMENT OF FACTS AND PROCEDURAL HISORY

Mr. Ceesay is sixty-three (63) years old and has lived in the United States for nearly three decades. He is not fully literate-he has limited reading and writing ability because he never attended school. *See* ECF No. 1-5, Ceesay Decl. He suffers from a myriad of serious and chronic medical issues. *See* ECF No. 1-2, Shin Medical Letter.

Mr. Ceesay was re-detained—approximately 14 years after he was released from ICE detention—at a regularly scheduled ICE check-in according to the unilateral decision of one ICE officer. *See* ECF No. 1-5, Ceesay Decl., ¶6. Prior to his unnoticed detention, he lived in the Bronx, New York in the same apartment for nearly three decades.

At the time of his unnoticed detention on February 19, 2025, Mr. Ceesay did not have his medication. Therefore, there was a disruption in Mr. Ceesay receiving his medication because he was taken to two different facilities prior to the BFDF. RFK Human Rights met Mr. Ceesay for the first time on March 4, 2025, at the BFDF. Mr. Ceesay did not have legal counsel at the time of his unnoticed detention by ICE on or about February 19, 2025.

On March 4, 2025, Mr. Ceesay was in visible medical distress and was, at the request of RFK Human Rights, sent to the medical unit at BFDF. However, the medical unit at BFDF could not address his medical needs on that date, and he was thereafter sent to an outside of medical provider for emergency medical treatment. As is set forth in the Shin Medical Letter, Mr. Ceesay suffered "a transient ischemic attack (a temporary stroke-like syndrome due to atherosclerotic plaque in the blood vessels of the brain)." *See* ECF No. 1-2, Shin Medical Letter.

As the Shin Medical Letter explains, Mr. Ceesay's "medications serve an important role in decreasing the risk of stroke and stroke-like conditions which can lead to chronic disability and death. Even while on these medications, Mr. Ceesay suffered from a transient ischemic attack which further reflects his especially high risk of complications if he were to be taken off his medications." *Id.* As someone who cannot read or write, Mr. Ceesay is dependent on consistency with health care providers that can help organize and advise on his medication.

On March 11, 2025, RFK Human Rights sent an email to ICE that requested *inter alia* any and all documents related to Mr. Ceesay's immigration proceedings, including, but not limited to, any and all documents that were served upon him at the time of his detention by ICE and that have been served upon him since the time of his detention at BFDF. RFK Human Rights also requested any and all medical records for Mr. Ceesay and to be provided notice of any and all meetings with

ICE and consulates. RFK Human Rights sent email follow-ups to ICE on March 13, 2025, March 14, 2025, March 17, 2025, and March 18, 2025. *See* ECF No. 1, Complaint at ¶37.

On March 20, 2025, ICE transmitted Mr. Ceesay's medical records to RFK Human Rights. Thereafter, RFK Human Rights sought and was able to secure the pro bono assistance of a medical expert, Dr. Shin, who prepared and completed the Shin Medical Letter on March 25, 2025. *See* Exh. 2, Shin Medical Record. Dr. Shin subsequently prepared the Shin Supplemental Letter, Exh. 3, upon receiving additional medical records that were not yet received from Jacobi Medical Center prior to the preparation of the Shin Medical Record. *See* ECF No. 1, Complaint at ¶37.

On March 25, 2025, ICE transmitted to RFK Human Rights a total of six (6) pages of legal documents. *See* ECF No. 1, Complaint at ¶38.

Prior to his unnoticed detention, Mr. Ceesay was receiving medical treatment at the Jacobi Medical Center in the Bronx, New York. Mr. Ceesay did not have any reason to suspect that he would be arrested on February 19, 2025. *See* ECF No. 1-5, Ceesay Decl., ¶¶23-25. Mr. Ceesay did not have legal counsel prior to March 11, 2025, and did not have any prior notice or warning that ICE would detain and process him for deportation on or about February 19, 2025. *See Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV (W.D.N.Y. May 2, 2025).

On March 31, 2025, Mr. Ceesay, by and through undersigned counsel, filed his motion to reopen with the Immigration Court, 26 Federal Plaza, New York, NY 10278 on March 31, 2025. *See* ECF No. 1-4, motion to reopen. Together with the motion to reopen, Mr. Ceesay also filed a motion for a stay of removal pending the adjudication of the motion to reopen. Mr. Ceesay is seeking to reopen his immigration removal proceeding to apply for asylum, withholding of removal and deferral under the United Nations Convention Against Torture ("CAT"). As is set forth more fully in his motion to reopen, given the impact of Mr. Ceesay's serious medical issues,

he will suffer economic harm in the Gambia. The Second Circuit has held that "[e]conomic harm 'constitutes persecution if it (1) deprives the victim of liberty, food, housing, employment or other essentials of life, or (2) deliberately imposes a severe economic disadvantage." *De La Rosa v. Sessions*, 690 F. Appx. 20, 22 (2d. Cir. 2017) citing to *Huo Qiang Chen v. Holder*, 773 F.3d 396, 405 (2d Cir. 2014). *Id.*

On April 25, 2025, Mr. Ceesay's motion to reopen was denied. *See* ECF No. 1-1, Online Decision Information. Mr. Ceesay's counsel learned of the Immigration Decision by checking the available information on the EOIR automated system online.

On April 28, 2025, Mr. Ceesay's counsel contacted the Immigration Court, the legal assistant for the Immigration Judge who denied the motion to reopen, and requested a copy of the Immigration Judge's decision. Mr. Ceesay's counsel did not receive a return call. *See* ECF No. 1, Complaint at ¶44.

On April 29, 2025, a representative from RFK Human Rights went to the Immigration Court at 26 Federal Plaza in person to request a copy of the IJ Decision. RFK Human Rights was advised by 26 Federal Plaza that while the Immigration Judge had denied Mr. Ceesay's motion to reopen a written decision had not yet been issued. *See* ECF No. 1, Complaint at ¶45. Therefore, the only available decision that Mr. Ceesay has as of the date of this Complaint is information available on the EOIR automated system online and the representations of the Immigration Court.

An appeal of the Immigration Judge's decision was filed with the BIA on April 30, 2025. Mr. Ceesay also filed an emergency stay motion with the BIA. *See* ECF No. 1, Complaint at ¶47.

On May 3, 2025, Mr. Ceesay was released from the custody of ICE pursuant to the Decision and Order of the Honorable Lawrence J. Vilardo. *See Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV (W.D.N.Y. May 2, 2025).

On this date, May 5, 2025, at approximately 2:47 P.M., Plaintiff's counsel received a call from the BIA in which they advised that: 1) Defendants ICE confirmed that Mr. Ceesay was reporting to ICE on May 6, 2025, and that he was going to be deported on May 7, 2025; 2) that the Board denied Mr. Ceesay's stay motion but that it could not fax or email a decision to Plaintiff's counsel because the file is a paper file and can only be transmitted by mail; and 3) that the Board has not decided Mr. Ceesay's appeal of the Immigration Judge's denial of his motion to reopen.

Even though Mr. Ceesay was released from detention on May 3, 2025 with an electronic monitor, has serious medical issues, has resided in the United States for more than three (3) decades, has a pending appeal of a denial of his motion to reopen by the Immigration Judge who has not yet issued a written decision and that ICE's travel document is valid until May 7, 2025, ICE intends to detain Mr. Ceesay at his scheduled check-in with ICE on May 6, 2025 at 12:15 P.M. and to remove him from the United States on May 7, 2025 using a series of commercial flights that have already been arranged by the government.

## **ARGUMENT**

### I.    THIS COURT HAS JURISDICTION TO GRANT PLAINTIFF'S MOTION.

This Court has jurisdiction over Mr. Ceesay's request pursuant to 28 U.S.C. § 1331 (federal question) and the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361. This Court can grant declaratory and further proper relief pursuant to 28 U.S.C. §§ 2201-2202, 5 U.S.C. § 702; 28 U.S.C. § 1361 and the Federal Rules of Civil Procedure 57 and 65. The United States has waived sovereign immunity pursuant to 5 U.S.C. § 702.

Mr. Ceesay's motion for injunctive relief here is cabined simply to an order that the Board adhere to its duty and timely adjudicate his appeal of the Immigration Judge's motion to reopen. On this date, May 5, 2025, at approximately 2:47 P.M., Plaintiff's counsel received a call from the

BIA in which they advised that: 1) Defendants ICE confirmed that Mr. Ceesay was reporting to ICE on May 6, 2025 and that he was going to be deported on May 7, 2025; 2) that the Board denied Mr. Ceesay's stay motion but that it could not fax or email a decision to Plaintiff's counsel because the file is a paper file and can only be transmitted by mail; and 3) that the Board has not decided Mr. Ceesay's appeal of the Immigration Judge's denial of his motion to reopen. As noted, Mr. Ceesay has a right to seek a judicial stay of removal in conjunction with a petition for review over any denial of his motion to reopen. 8 U.S.C. § 1252(a)(1); (b)(3)(B).

The BIA's denial of Mr. Ceesay's emergency motion for a stay of removal and withholding adjudication of Mr. Ceesay's appeal of the Immigration Judge's decision to deny his motion to reopen likewise withholds the needed predicate final order, i.e., any denial of his motion to reopen, necessary for filing a petition for review. Mr. Ceesay has thus been deprived of the opportunity to seek a judicial stay of removal before the Second Circuit if the Board denies his motion to reopen. *See Shaboyan v. Holder*, 652 F.3d 988, 989-90 (9th Cir. 2011) (holding that the court does not have jurisdiction to review the BIA's denial of a stay of removal independent of a petition for review as a stay denial is not a "final order" of removal).

If Mr. Ceesay is deported because the Board has now denied a stay of removal-a decision that his counsel will not receive until after May 7, 2025 because the Board refused to provide the decision by fax or email-but does not adjudicate his appeal of the Immigration Judge's denial of his motion to reopen-he cannot avail himself of the statutory right to seek review before the Second Circuit and a judicial stay of removal before that Court. The Board, as the relevant adjudicatory body in this posture, has a duty to adjudicate Mr. Ceesay's appeal of the Immigration Judge's decision that denied his motion to reopen. Further, the Board's own regulation calls for the prompt resolution of matters, with a priority for detained cases. 8 C.F.R. § 1003.1(e)(8). Thus, the Board

has a duty to not only adjudicate Mr. Ceesay's motions, but to timely do so.

## II.    THIS COURT SHOULD GRANT PLAINTIFF'S MOTION.

The standards for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure are identical. To succeed on an application for a temporary restraining order or a motion for preliminary injunction, the plaintiff must show (a) either (i) a likelihood of success on the merits of the underlying claims; or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balancing of the hardships weighing decidedly in its factor; and (b) a likelihood of irreparable harm if the relief is not granted. *See* e.g. *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010); *Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010). *See also Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 152-53 (2d Cir. 2007); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) and *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). This standard remains good law after the Supreme Court's ruling in *Nken v. Holder*, 556 U.S. 418 (2009) (a litigant need not be "more likely than not" to succeed on the merits *Id*. at 37).

Here, because Mr. Ceesay meets both the irreparable harm and likelihood of success prongs of the standard for granting a TRO, and because the requested relief is not overly burdensome on Defendants, he merits such relief.

### A.  Mr. Ceesay is Likely to Succeed on the Merits.

Mr. Ceesay seeks that the Board adjudicate his the appeal of the Immigration Judge's denial of his motion to reopen on a timely basis. On this date, May 5, 2025, at approximately 2:47P.M., Plaintiff's counsel received a call from the Board in which they advised that: 1) Defendants ICE confirmed that Mr. Ceesay was reporting to ICE on May 6, 2025 and that he was going to be

deported on May 7, 2025;  2) that the Board denied Mr. Ceesay's stay motion but that it could not

fax or email a decision to Plaintiff's counsel because the file is a paper file and can only be

transmitted by mail; and 3) that the Board has not decided Mr. Ceesay's appeal of the Immigration

Judge's denial of his motion to reopen. Mr. Ceesay therefore cannot go the Second Circuit because

the Board has yet to decide on his appeal of the Immigration Judge's denial of his motion to reopen

and the Board has now denied his stay of removal-a decision rendered but not provided to

Plaintiff's counsel.

Mr. Ceesay filed a Complaint on May 4, 2025, seeking relief under the Mandamus and

Venue Act, 28 U.S.C. § 1361 and under the Administrative Procedure Act (APA), 5 U.S.C. §

706(1).

> *1.  Mr. Ceesay is entitled to relief under 28 U.S.C. § 1361.*

Mandamus relief is available to a party to compel a federal officer to perform a duty where:

1) the party has a clear right to the relief requested; 2) the officer has a clear, non-discretionary

duty to act; and 3) there is no adequate remedy available. 28 U.S.C. § 1361; *Iddir v. I.N.S.*, 301

F.3d 492, 499 (7th Cir. 2002). Here, Mr. Ceesay has a clear right to have his appeal of the

Immigration Judge's denial of his motion to reopen adjudicated on a timely basis. Mr. Ceesay also

has a clear right to receive a written decision from the Immigration Judge that denies his motion

to reopen.

Immigration regulations and the Board's Practice Manual confirm that the duty to

adjudicate Mr. Ceesay's his appeal of the Immigration Judge's denial of his motion to reopen lies

with the Board. 8 C.F.R. § 1003.2(a); Board of Immigration Appeals Practice Manual (BIA

Practice Manual); Chapter 5.2(a)(III)(A) and Chapter 6.3(a)1.[4] The Board's own regulations and

---

[4] See Board of Immigration Practice Manual available at
https://www.justice.gov/eoir/page/file/1284741/download.

guidance evince its policy of promptly resolving matters pending before it, "…with a priority for detained cases." 8 C.F.R. § 1003.1(e)(8); see also *Calderon–Ramirez v. McCament*, 877 F.3d 272, 275 (2017). The fact that he now faces a date certain by which his right to a judicial stay of review might be extinguished puts him on different footing. *Calderon–Ramirez*, 877 F.3d at 275.

Moreover, it cannot be disputed that Mr. Ceesay has no other adequate remedy if the Board fails to comply with its duty to adjudicate his appeal of the Immigration Judge's decision-a decision rendered but not yet written-if it denies his motion for a stay of removal before he is physically removed from the United States. As is discussed *supra,* Mr. Ceesay, through undersigned counsel, moved expeditiously to file a motion to reopen with the Immigration Judge after being detained without any notice or warning on February 19, 2025. *See* ECF No. 1, Complaint, ¶¶34-41. The Board has the ability to quickly decide since it has now-as of 2:47 P.M. denied Mr. Ceesay's motion for a stay of removal by rendering a decision that Plaintiff's counsel does not even have and will only receive via mail because the Board would not fax or email a copy of the decision.

Mr. Ceesay has a right to petition for review any denial of his appeal of the Immigration Judge's denial of his motion to reopen before the Second Circuit, the judicial circuit in which his case arises. *See* 8 U.S.C. § 1252(a)(1); *Boika v. Holder*, 727 F.3d 734 (7th Cir. 2017). Crucial to Mr. Ceesay's claim is that he can only seek a judicial stay in conjunction with a petition for review. 8 U.S.C. § 1252(b)(3)(B). The Board has now denied his stay of removal but has not decided his appeal before he is deported and thus he loses his statutory right to seek a judicial stay of removal from the court of appeals. Mr. Ceesay's physical removal to a country where he faces economic harm make it impossible for him to pursue a meritorious claim for protection.

> 2. *Mr. Ceesay is entitled to relief under 5 U.S.C. § 706(1).*

Mr. Ceesay maintains that the Immigration Judge and Board has unlawfully withheld or unreasonably delayed action in his case. 5 U.S.C. § 706(1). As noted, the Board has a duty to adjudicate his pending motions, and the Immigration Judge has a duty to issue a written decision of a denial of a motion to reopen. The Board denied Mr. Ceesay's motion for a stay of removal yet has not decided his appeal. The Board has provided no indication or assurance that it will rule on his appeal of the Immigration Judge's denial of his motion to reopen, which is the crucial adjudication to ensure Mr. Ceesay's right to seek a judicial stay per 8 U.S.C. § 1252(b)(3)(B), in the absence of stay of removal.

Where neither the immigration statute nor regulations provide a timeline for adjudication of an appeal filed by an individual in government custody, under the "rule of reason," this Court can look to various factors in concluding, as Mr. Ceesay urges, that– in the face of imminent removal– it unreasonable to not issue an immediate decision. *See Ruiz v. Wolf,* 2020 WL 6701100 at *4, (N.D.Ill. Nov. 20, 2020) (citing *Research & Action Ctr. v.F.C.C.* ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984).

Importantly, where there are no clearly delineated timeframes for agency action, a court should consider that "…delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake," "the effect of expediting delayed action on agency activities of a higher or competing priority…" as well as "…the nature and extent of the interests prejudiced by the delay…." *Id.* Further, "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.*

Finally, mirroring the showing for irreparable harm, "the nature and extent of the interests prejudiced by delay" are weighty here. Mr. Ceesay seeks adjudication of his appeal of the

Immigration Judge's denial of his motion to reopen on the basis of a claim for protection under asylum, withholding of removal, and CAT. *See* ECF No. 1-4, motion to reopen. As previously noted, if the Board does not timely rule on his appeal of the Immigration Judge's denial of his motion to reopen and it denies a stay of removal, his ability to pursue a judicial stay of removal is extinguished.

### B. Mr. Ceesay Has No Adequate Remedy at Law and Faces Irreparable Harm in the Absence of a Temporary Restraining Order.

Under the four-factor test, "[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal citation and quotation marks omitted). Under this prong, a party seeking a TRO "must show that "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the position they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999); *see also Salinger v. Colting*, 607 F.3d 68, 81-82 (2d Cir. 2010). In addition, the harm must be "neither remote nor speculative, but actual and imminent." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted).

Here, all four *Nken* factors weigh toward exercising judicial discretion to grant a TRO. First, Mr. Ceesay has made a strong showing that he is likely to succeed in his claims. *See supra*, Section I. Second, absent a TRO, Ceesay will suffer irreparable harm. Under the four-factor test, "[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal citation and quotation marks omitted). Under this prong, a party seeking a TRO "must show that "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the position they previously

occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999); *see also Salinger v. Colting*, 607 F.3d 68, 81-82 (2d Cir. 2010). In addition, the harm must be "neither remote nor speculative, but actual and imminent." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted). *See* ECF No. 1-3, Supplemental Shin Medical Letter and ECF No. 1-2, Shin Medical Letter. Third, removing Mr. Ceesay before his non-frivolous challenges to the removal order have been fully adjudicated would raise significant due process concerns. It is well-settled that "[t]he motion to reopen is an 'important safeguard' intended "to ensure a proper and lawful disposition" of immigration proceedings. *Dada v. Mukasey*, 554 U.S. 1, 18 (2008).

The Seventh Circuit has "emphasized that the execution of a deportation order before the final resolution of any (non-frivolous) challenges to the order would raise significant equitable, if not constitutional, concerns." *Castaneda-Suarez v. INS*, 993 F.2d 142, 145 (7th Cir. 1993). The D.C. Circuit has expressed similar apprehensions. *See Gutierrez-Rogue v. INS*, 954 F.2d 769, 773 (D.C. Cir. 1992) ("[A] significant due process concern would be raised if the INS were to deport an alien prior to the final resolution of her (non-frivolous) challenge to a fact officially noticed by the Board."). For these reasons, courts "presume that when an [] applicant uses a good faith motion to reopen to dispute officially noticed facts, the Board will exercise its discretion to stay the execution of its decision until it has had an opportunity to rule on the applicant's motion." *Id.* (quoting *Kaczmarczyk v. INS*, 933 F.2d 588, 597 n.9 (7th Cir. 1991)). Finally, a discretionary grant of a stay of removal would not significantly prejudice the government or the public's interest in ensuring its "prompt execution of removal orders." *Nken*, 556 U.S. at 436. This is especially true under the circumstances of this case.

As is discussed *supra,* Mr. Ceesay has no adequate remedy at law at present. As is set forth

in the Supplemental Shin Medical Letter (ECF No. 1-3):

> Although I had initially described Mr. Ceesay as being at high risk of complications should his medications and specialty care be interrupted, based on a close review of his medical records from Jacobi Medical Center which I did not have access to until recently and history of symptoms, I believe the risk to his health is even higher because he has already experienced many of the complications of interruptions in his medications and care already and also experiences regular symptoms connected to his extensive cardiovascular disease spanning neurologic, cardiac, and peripheral vascular systems.

> It is less a matter of "if" these complications will occur because these events have happened and continue to occur.  It's more likely "when again" will these limiting and disabling symptoms worsen or a fatal complication occur.

Mr. Ceesay faces physical removal from the United States on May 7, 2025, and merely because the Immigration Judge and the Board will not comply with its adjudicatory duty, he stands to be deprived of his statutory right to seek a judicial stay of removal before the Second Circuit. At this juncture, Mr. Ceesay has exhausted his administrative remedies.

Mr. Ceesay stands to face erroneous removal without an opportunity to seek a stay from the court of appeals, which is statutorily available to him. Mr. Ceesay's only recourse at this juncture is for this Court to order the Board to act timely.

**C.  A TRO Would not Severely Harm the Government or Public Interest**

In this matter, Mr. Ceesay urges that a TRO would not severely harm the government or public interest and that the balance of equities tips in his favor. It cannot be the case that the Immigration Judge Board will be harmed by complying with its duty to adjudicate Mr. Ceesay's matters before the Board promptly. Moreover, ICE has a travel document that is valid through October 2025 and therefore their rushed efforts to remove Mr. Ceesay from the United States given the facts presented herein strains credulity and reason.

Mr. Ceesay has moved as expeditiously as possible before the Immigration Judge and then before the Board. *See* ECF No. 1, Complaint at ¶¶34-47. The Immigration Judge had not even

written a decision denying Mr. Ceesay's motion to reopen but yet Plaintiff had no choice but to file an appeal after his counsel was told on April 29, 2025, that a written decision was not available but that the Immigration Judge denied his motion to reopen. Mr. Ceesay's counsel filed an appeal with the Board together with an emergency motion for a stay of removal on April 30, 2025. Only today, at 2:47 P.M. did the Board advise that it had denied the motion for stay after Plaintiff's counsel contacted the Board emergency stay line. Plaintiff's counsel does not even have a copy of the denial of the emergency stay motion because the Board will only transmit by mail.

As noted, the Board's own regulations address the goal of prompt resolution of matters before it, including an acknowledgement that detained cases take priority. 8 C.F.R. 1003.1(e)(8). The Board would not be unduly burdened if directed to expeditiously adjudicate Mr. Ceesay's case so that he can seek. It expeditiously decided the emergency motion for a stay of removal after it was contacted on his date in the morning, advised that Plaintiff's counsel, upon information and belief, understood that Mr. Ceesay was going to be detained on May 6, 2025 and deported on May 7, 2025 for the purposes of deportation. Mr. Ceesay cannot seek appeal, review before the Second Circuit with the Board decided the Plaintiff's appeal of the Immigration Judge's denial-a decision that has been rendered but not yet written-of his motion to reopen. .

When a federal agency adheres to its statutory and regulatory duty, the public interest is served. *Matter of S-M-J-*, 21 I. & N. Dec. 722, 727 (BIA 1997) ("[A]s has been said, the government wins when justice is done."); *United States v. Bartelho*, 129 F.3d 663, 670–71 (1st Cir. 1997) (emphasizing that "the government's motive in all proceedings is to seek the truth and to ensure that justice is done," and that "the Government wins its point when justice is done in its courts") (citation omitted); *Reid v. INS*, 949 F.2d 287, 288 (9th Cir. 1991) ("Counsel for the government has an interest only in the law being observed, not in victory or defeat in any particular

litigation.").

Mr. Ceesay was released on an OSUP in 2011 that permitted him to remain in the United States and granted him the ability to seek work authorization. From the time that ICE released Mr. Ceesay on an OSUP in 2011 until February 19, 2025, he had not prior notice that the government was going to move to detain him for the purposes of deportation. Quite to the contrary-the the the government *never* did anything to signal that they would detain him without any prior notice or warning and-based upon the facts of the case-it appears that the decision to do so was made unlawfully and unilaterally by one ICE officer. *Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV.  As the Supreme Court has found, a person should be provided with a "minimum standard of decency, honor, and reliability" in his dealings with the government. *See Occidental Life Ins. Co. of California v. EEOC,* 432 U.S. 355, 373 (1977). And when that does not occur, as is the case here, equity should be applied to remedy the harm suffered by the individual.

The third and fourth factors, meanwhile, overlap when the Government is the opposing party. *Nken*, 556 U.S. at 435. The Government always possesses "a public interest in [the] prompt execution of removal orders[,]" but such an interest is to be balanced with the additional "public interest in preventing" noncitizens from "being wrongfully removed." *Id.* at 436.

Mr. Ceesay is illiterate and at the time of his unnoticed detention on or about February 19, 2025, he did not have an attorney. In fact, he did not even have the ability to meet with an attorney until March 4, 2025, when RFK Human Rights conducted a pre-approved legal rights presentation at the BFDF. On March 4, 2025, Mr. Ceesay was not even medically able to convey the circumstances of his situation and-as is detailed in the Shin Medical Letter-had an acute medical crisis that required outside emergency intervention. *See* ECF No. 1-3, Supplemental Shin Medical and ECF No. 1-2, Shin Medical Letter and *Ceesay v. Kurzdorfer,* No. 25-CV-267-LJV (W.D.N.Y.

May 2, 2025). *See also,* ECF No. 1, Complaint at ¶¶34-47.

When RFK Human Rights was finally able to meet with Mr. Ceesay via a video legal call and obtain the necessary paperwork to proceed with representation and the releases necessary to obtain his "alien file," the government did not provide *any* documents until March 25, 2025, and those consisted of 6 pages and nothing more. After receiving the medical records from the government, Mr. Ceesay, by and through his attorney, moved as expeditiously as possible to obtain a pro boon expert medical opinion that was necessary to support legal arguments in his case including this motion to reopen. *See also,* ECF No. 1, Complaint at ¶¶34-47

If Mr. Ceesay had been given notice and warning that he was going to be detained for the purposes of deportation, he could have sought legal counsel to pursue a motion to reopen his case sooner. But, the government did not provide him with the "minimum standard of decency, honor, and reliability" and as such he could not have submitted a motion to reopen prior to March 31, 2025. *See e.g., Lemon v. Kurtzman,* 411 U.S. 192, 200 ("In shaping equity decrees, the trial court is vested with broad discretionary power.") and *Hecht Co. v. Bowles*, 321 U.S. 321, 329-330 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.") (internal citations omitted).

The harm posed to Mr. Ceesay by removal, as is detailed *supra*, outweighs any potential harm to the government if the stay is granted. While the government has an interest in executing final orders of removal, *see Nken*, 566 U.S. at 436, that interest is based on the notion that the order has been given full and proper consideration by the courts. Extending a stay to permit review by

the Court causes no harm to the Government and would prevent very serious harms to Mr. Ceesay.

The *Nken* Court also recognized the "public interest in preventing aliens from being wrongfully removed," which must weigh heavily in the Court's consideration. 556 U.S. at 436; *see also Nat'l Immigration Project v. U.S. Dep't of Homeland Security*, 842 F. Supp. 2d 720, 733 (S.D.N.Y. 2012) (the potential for irreparable injury should take into account the possibility that the ruling sought to be stayed is erroneous); *Rosario v. INS*, 962 F.2d 220, 221 (2d Cir. 1992) (superseded by statute on other grounds) (noting that the public has an interest in "ensur[ing] that whatever compassionate conditions are written into the law are carefully adhered to"). Accordingly, a stay in Mr. Ceesay's case preserves the integrity of our justice system by ensuring careful judicial review, without prematurely subjecting individuals to the irreparable harms.

## <u>CONCLUSION</u>

Mr. Ceesay respectfully requests that the Court grant his motion for a TRO and maintain the status quo until this Court has an opportunity to assess his underlying Complaint.

//

Respectfully Submitted,

/s/ Sarah E. Decker
Sarah E. Decker
Staff Attorney
1300 19th Street NW, Ste. 750
Washington, DC 20036
T: (646) 289-5593
E: decker@rfkhumanrights.org

DATED:   May 5, 2025
         New York, NY

/s/ Sarah T. Gillman
Sarah T. Gillman
Director of Strategic U.S. Litigation
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine St., 8th Fl., Ste. 801
New York, NY 10005
T: (646)289-5593
E: gillman@rfkhumanrights.org

*Attorneys for Petitioner-Plaintiff*