```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| SERING CEESAY,<br><br>      Plaintiff,<br><br>      v.<br><br>PAM BONDI, et al.,<br><br>      Defendants. | 25-cv-3716 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

Back in 1997, plaintiff Sering Ceesay, after receiving full due process, was ordered removed from the United States to his native country -- the Republic of The Gambia. Yet for more than a quarter of a century, Ceesay has managed to avoid such removal. And now, when the Government seeks to finally effectuate such removal by arresting him preliminary to deportation, Ceesay asks this Court to issue a temporary restraining order ("TRO") barring the relevant governmental officials and entities "from detaining him for the purposes of removing him from the United States . . . until such time the Court hears and determines Plaintiff's Complaint for Writ of Mandamus." ECF No. 7 at 2. For the reasons set forth below, the Court likely lacks jurisdiction to issue such relief and, even if it had jurisdiction, sees no good reason to stop the Government from finally enforcing its lawful order.

Ceesay is a native and citizen of the Republic of The Gambia who came to the United States unlawfully in 1994 but was caught.

1

He initially agreed to voluntarily depart from the United States, but after he failed to carry out his pledge, he was ordered removed, an order that became final in November 1997. Although immigration authorities have attempted, in fits and starts, to effect Ceesay's removal, he has somehow managed to remain in the United States ever since, sometimes, it would appear, with the knowledge and tacit acceptance of Immigration and Customs Enforcement ("ICE").

Finally, however, Ceesay was detained by ICE on February 19, 2025, pursuant to his removal scheduled for May 7, 2025. More than a month after his detention, Ceesay, on March 31, 2025, filed with the relevant immigration court a motion to stay removal pending resolution of a new motion to "reopen" the original removal proceedings. In sum and substance, Ceesay claims that if forced to return to the Republic of The Gambia, he faces "economic" harm that somehow rises to the level of "persecution" because of alleged deficiencies in the ability of the Gambian healthcare system to deal with his alleged health problems. See ECF No. 1-4.

On April 25, 2025, the immigration court denied Ceesay's motion to reopen. Soon after, on April 30, 2025, Ceesay filed a notice of appeal with the Board of Immigration Appeals ("BIA") and requested that the BIA stay his removal. On May 5, 2025, the BIA, without commenting on the motion to reopen, denied the stay request. Ceesay then filed this action later that same day, and

this Court put the matter down for a hearing on May 13, 2025. Meanwhile, on May 8, 2025, the immigration court issued a written opinion and order explaining the reasons for its denial of Ceesay's motion to reopen. Against this background, this Court held oral argument on the instant motion on May 13, 2025.

Having now fully considered the parties' oral arguments and written submissions, the Court denies Ceesay's motion for a TRO for two reasons. First, it is likely that the Court lacks jurisdiction to grant the requested relief. Two provisions of the immigration statutes are relevant to this conclusion. 8 U.S.C. § 1252(g) provides that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." And 8 U.S.C. § 1252(a)(5) provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this subchapter . . . ."

3

As a general matter, the Second Circuit has concluded that § 1252(a)(5) applies not only to a "district court's entertaining of a direct challenge to a removal order," but "equally to preclude . . . an indirect challenge." Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011) (per curiam) (emphases added). And here, the interim relief requested by Ceesay -- to prevent immigration officials "from detaining him for the purposes of removing him from the United States" -- is, on its face, an indirect attack on the removal order itself. If the Court were to grant the relief requested by Ceesay and bar the Government from removing him, "then the Government would be without a mechanism to enforce the removal order until such time that the BIA adjudicated [Ceesay's] motion." Barros Anguisaca v. Decker, 393 F. Supp. 3d 344, 350 (S.D.N.Y. 2019) (internal quotation marks omitted). "The effect of any stay by this Court would be to compel the adjudication of [Ceesay's] motion, and thus, like the . . . application in Delgado, [Ceesay's motion] is inextricably linked to his removal order." Id. (internal quotation marks omitted).

Ceesay's attempts to recharacterize the requested relief are unpersuasive. He repeatedly argues that he "does not seek a stay of removal as his primary relief" but "only to preserve the status quo while the Court decides whether to grant mandamus relief." ECF No. 11 at 4. This distinction, especially in light of Delgado, elevates form over substance. In other words, Ceesay fails to

4

meaningfully engage with the substance of the relief that he requests, which would require the Court to interfere with the execution of a lawful removal order. Indeed, other courts in this Circuit have recognized that similar requests violate the jurisdictional limitations of § 1252. See, e.g., Barros Anguisaca, 393 F. Supp. 3d at 350 (rejecting argument that the plaintiff was "merely seeking a stay of removal pending adjudication of his claim by the BIA"); see also id. (collecting cases to support the assertion that "[n]umerous courts in this Circuit have held . . . that a request for a stay of removal constitutes a challenge to a removal order, and that accordingly district courts lack jurisdiction to grant such relief") (alteration in original) (internal quotation marks omitted).

Independently, moreover, even if the Court were to determine that it had jurisdiction to grant the TRO requested by Ceesay, the Court would conclude that he has not remotely met the high burden to demonstrate his entitlement to a TRO. Indeed, "a TRO, perhaps even more so than a preliminary injunction, is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Free Country Ltd. v. Drennen, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (quoting JBR, Inc. v. Keurig Green Mountain, Inc., 618 F. App'x 31, 33 (2d Cir. 2015)). Most relevant here, a party seeking a TRO must show, among other requirements, a likelihood of success

5

on the ultimate merits of the lawsuit. Id. (citing JBR, Inc., 618 F. App'x at 33).

Ceesay has not demonstrated a likelihood of success on the merits. He requests that the Court "order the [BIA] . . . to adjudicate his appeal of the decision and order of the Immigration Judge denying his motion to reopen." ECF No. 1 ¶ 1. At the outset, like Ceesay's request for a TRO, the proposed writ of mandamus faces jurisdictional obstacles. See § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . adjudicate cases . . . .").

Even putting those jurisdictional concerns aside, the very fact that the BIA has already denied Ceesay's request for a stay strongly suggests that the BIA does not believe his motion to reopen has even colorable merit. True, they have not yet formally decided his appeal from the immigration court's denial of his motion to reopen, an appeal that was filed only on April 30, 2025. But no one could seriously argue that the BIA's failure to formally decide by less than three weeks later Ceesay's so-recently-filed appeal from the immigration court's denial of his motion to reopen is somehow unreasonable.

Indeed, to the extent Ceesay suggests that any such delay is unreasonable if it results in his deportation before the BIA has decided his appeal, that argument is foreclosed by Congress's

6

enactment of the statutory scheme in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which allows a deportee to continue pursuing such an appeal after being deported. See Coyt v. Holder, 593 F.3d 902, 906 (9th Cir. 2010) ("Congress wished to expedite the physical removal of those aliens not entitled to admission to the United States, while at the same time increasing the accuracy of such determinations. To that end, IIRIRA inverted certain provisions of the [Immigration and Nationality Act], encouraging prompt voluntary departure and speedy government action, while eliminating prior statutory barriers to pursuing relief from abroad.") (internal quotation marks and citation omitted); see also Luna v. Holder, 637 F.3d 85, 95-96, 101 (2d Cir. 2011).

In actuality, the immigration authorities here have acted quite swiftly to address Ceesay's motions, having expeditiously decided both of his motions at the immigration court level and his stay motion at the BIA level. By comparison, Ceesay has either ignored or sought to evade for more than a quarter century his original agreement to self-deport and any subsequent compliance with the 1997 removal order. In distinct contrast with some of the other deportation cases that have recently attracted attention, Ceesay is engaged in nothing more than meritless attempts to further stall a removal that was ordered decades ago.

For the foregoing reasons, plaintiff's motion for a TRO is denied, and the Clerk of Court is respectfully directed to close docket entry 4.

SO ORDERED.

Dated: New York, NY
       May 16, 2025

                                          _____
                                          JED S. RAKOFF, U.S.D.J.